UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ericka Parker, as Bankruptcy
Trustee for Donnie Glover,                                    Case No.  3:18-cv-868

                         Plaintiff,

            v.                                                MEMORANDUM OPINION
                                                                  AND ORDER

FCA US LLC, *et al.*,

                         Defendants.


## I.  INTRODUCTION

Defendants Mike Sawaya, Tim Alexander, Mark Epley, and UAW Local 12 seek summary

judgment on all claims asserted against them by Ericka Parker, as Bankruptcy Trustee for Donnie

Glover.  (Doc. No. 69).  Plaintiff filed a brief in opposition, (Doc. No. 75), and Defendants filed a

brief in reply.  (Doc. No. 77).  For the reasons stated below, I grant Defendants' motion.

## II.  BACKGROUND

Glover began working for FCA US LLC,[1] and became a member of UAW Local 12, in May

2013.  She held several positions before being selected as a team leader in the powder sand

department in October 2015.  (Doc. No. 60 at 13).  Team leaders acted as mentors for the other

employees in the department and covered for team members who were on break.  (*Id.* at 13, 17).

---

[1]  FCA previously was named as a defendant as well.  (Doc. No. 40 at 2).  After FCA moved for
summary judgment, (Doc. No. 69), Plaintiff and FCA stipulated to the dismissal with prejudice of
Plaintiff's claims against FCA.  (Doc. No. 74).

On August 15, 2016, Glover asked Sawaya, her union steward, for help with filling out a form requesting permission to take vacation time without pay.  (*Id.* at 38).  Sawaya told Glover to meet him in the employee break room, which had a computer desk for the paint shop team leaders to use.  (*Id.* at 38-39).  Glover was on the break room phone with one of her supervisors when Sawaya entered the room and sat down at the desk.  (*Id.*).  Glover alleges that, after she finished her phone call, she sat down at the desk and Sawaya made an inappropriate comment to her about wanting to "rub [her] down."  (*Id.*).  Glover told Sawaya he had better not do that, and Sawaya said she had him sitting "on hard."  (*Id.* at 30).  Glover made a phone call to another supervisor, Doug Zipfel.  (*Id.* at 26, 30).  During that phone call, Sawaya reached over and rubbed his hand along the inside of Glover's right thigh, over the top of her clothes.  (*Id.* at 30).  Glover jumped up, slammed the phone down, and told Sawaya to leave.  (*Id.* at 25).

For his part, Sawaya denies making any inappropriate comments or touching Glover.  (Doc. No. 66 at 5).  At the time of the incident, two union committeemen (Brian Sims and Tim Alexander) stated Sawaya told them he brushed Glover's kneecap.  (Doc. No. 67-4 at 3).

Shortly after Sawaya left the break room, Glover went to the union offices to talk with someone about what had happened.  She found Sims in his office and explained to him what occurred.  (Doc. No. 60 at 40).  Sims recalls asking Glover three times during this conversation if she wanted to report the incident to the human resources department, but Glover declined each time.  (Doc. No. 69-10 at 3).

While Glover and Sims were talking, Sawaya called Glover on her cell phone.  Glover asserts Sawaya asked her if she had gone to HR and told her he did not want his wife and kids to find out.  (Doc. No. 60 at 40).  When the phone call ended, Glover asked Sims if he could take her back to the paint department or allow her to go home.  (*Id.*).  Sims replied he could not take her back and that

she needed to ask her union steward (Sawaya) for permission to leave before the end of her shift. (*Id.*).

Glover left the union offices and began walking back to the paint department. Sawaya met her in the pathway connecting the two locations. (*Id.*). Glover asserts Sawaya asked her if he violated her and, when Glover responded yes and said she should have hit Sawaya, Sawaya responded "you should have." (*Id.* at 41). Glover asked Sawaya for permission to leave for the day, but Sawaya said no. The two talked for four or five minutes before Glover returned to her workstation. (*Id.*).

After her shift, Glover called Alexander to tell him about the incident with Sawaya. (*Id.*). Glover told Alexander she could no longer work with Sawaya as her union steward because she didn't feel comfortable or safe. (*Id.*). She told Alexander she wanted to go to HR but "did not want to be retaliated against." (*Id.*). Glover testified Alexander told her he understood because "you don't want to be known as the lying [bitch] who gets the union steward fired." (*Id.*). Alexander denied making that comment or telling Glover that Sawaya might get fired if Glover reported him to HR. (Doc. No. 61 at 9). Alexander testified he offered to put Glover in contact with HR but she declined because she did not want to get Sawaya in trouble. (*Id.* at 6).

At Glover's request, Alexander arranged for her to meet with Mark Epley, the then-chairman of the UAW Local 12. Glover met with Epley, Alexander, and others to discuss the incident with Sawaya. (Doc. No. 60 at 42-43). At one point in the meeting, Epley told Glover he would walk her over to HR to report the incident, but Glover did not go at that time. (*Id.* at 44). Epley also told Glover she would receive a decrease in pay and overtime if she moved departments because she would no longer be a team leader. (Doc. No. 63 at 16). He advised Glover to take a few days and let him know if she did not want to be transferred to the assembly department, but he did not hear back from Glover. (*Id.*).

3

After Glover, Epley, and the others discussed Glover moving out of the paint department, Glover was asked if Sawaya could join the meeting. (Doc. No. 60 at 43). Glover agreed, and Sawaya entered the room. Glover asserts he apologized for the incident and told her he did not want her to leave the department. (*Id.*).

FCA then transferred Glover to the assembly department. After her transfer, Glover no longer was a team leader and therefore she did not receive the additional overtime and $1 per hour pay increase provided to team leaders.

After she was transferred, Glover was contacted by Lynn Harris-Gardner, the UAW civil rights committee chairperson. (*Id.* at 44). Glover told Harris-Gardner what happened with Sawaya, and Harris-Gardner suggested that Glover talk to Tonya Tooson, a representative with the Employee Assistance Program. Tooson told Glover she should contact Larry Price in the HR department to discuss the incident with Sawaya. (*Id.* at 45). Glover did so and later also discussed the incident with another HR employee, Adrian Baker. (*Id.*).

Baker interviewed several people about the incident and what occurred afterward, including Glover, Epley, Alexander, Sims, and Sawaya. Baker's "investigation revealed that Glover met with several people in the Union and stated that she wanted to be moved out of the paint department as resolution to her complaint against" Sawaya. (Doc. No. 67-4 at 5). "Glover was moved from the paint department to assembly at her request with full knowledge that she would lose her team leader pay and possibly some of the overtime hours she was accustomed to." (*Id.*). Baker noted Sims and Alexander both stated that Sawaya told them he did not touch Glover's thigh in a sexual manner but had touched her knee. (*Id.* at 9, 12). Sawaya subsequently was given a verbal warning for engaging in conduct which "could be construed" as a violation of FCA's policy against sexual harassment. (Doc. No. 63-6 at 1).

4

On September 18, 2016, while Baker's investigation was ongoing, Glover filed a grievance with the union regarding the incident with Sawaya and the events that followed.  (Doc. No. 61-10 at 5-7).  She asserted she was coerced into accepting the transfer to the assembly department and wanted to be reinstated to her team leader position.  (*Id.* at 7).  She also stated she did not want to be harassed or retaliated against.  (*Id.*).

Epley responded by letter, stating the union had determined her grievance did not have merit because it was her "choice to move into the new area, and . . . the Union [did] not believe that sexual harassment occurred . . . ."  (*Id.* at 8).  Epley also stated Glover could report the incident with Sawaya to HR.  (*Id.*).

Glover filed an unfair labor practices charge against the UAW Local 12, alleging the union: failed to report the Sawaya incident to FCA; caused FCA to transfer her, which resulted in a loss of wages and overtime; and refused to process her grievance over the issue.  (Doc. No. 60-12 at 1). She also alleged Epley and Alexander "made coercive statements to Glover related to her protected activity."  (*Id.*).  The National Labor Relations Board dismissed all of Glover's claims except her allegation against Alexander.  (Doc. No. 60-13 at 1).  The union entered into a settlement agreement regarding the statements attributed to Alexander.  (Doc. No. 69 at 15 n.5).

Glover also filed a charge of discrimination against the UAW Local 12.  (Doc. No. 60-14). The Equal Employment Opportunity Commission was unable to conclude whether the union violated Title VII of the Civil Rights Act of 1964 and issued Glover a right to sue letter.  (Doc. No. 60-15).

Glover filed suit on April 16, 2018.  (Doc. No. 1).  In her second amended complaint, she asserts claims against all Defendants for (1) sexual harassment in violation of Title VII; (2) sexual harassment in violation of Ohio Revised Code § 4112.02 *et seq.*; (3) sex discrimination in violation of Title VII; (4) sex discrimination in violation of O.R.C. § 4112.01 *et seq.*; (5) retaliation in violation of

Title VII; (6) retaliation in violation of O.R.C. § 4112.01 *et seq.*; and (7) civil conspiracy in violation of Ohio law.  (Doc. No. 40 at 8-14).

### III.    STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor.  *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).  A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law.  *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV.    ANALYSIS

Defendants UAW Local 12, Sawaya, Alexander, and Epley move for summary judgment on all claims asserted by Plaintiff.  (Doc. No. 69).  Plaintiff concedes Defendants are entitled to summary judgment on Glover's Title VII claims for hostile work environment, sex discrimination, and retaliation.  (Doc. No. 75 at 17 n.95, 21 n.113, and 24 n.124).  Thus, only Plaintiff's state-law claims remain.  As the parties note, "federal case law applying Title VII is generally applicable to cases involving § 4112 of the Ohio Civil Rights Act."  *Birch v. Cuyahoga Cnty. Probate Court*, 392 F.3d 151, 163 (6th Cir. 2004) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131-32 (Ohio 1981)).

#### A.    HOSTILE WORK ENVIRONMENT

Glover alleges Defendants' actions created a hostile work environment in violation of § 4112.02's prohibition of discrimination on the basis of sex.  In order to establish a hostile work

6

environment claim based upon Sawaya's behavior, Glover "must establish that (1) the sexual harassment was unwelcome, (2) the harassment was based on sex, (3) the harassing behavior was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, and (4) the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008) (citing *Knox v. Neaton Auto Prods. Mfg.*, 375 F.3d 451, 459 (6th Cir. 2004)).

Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim because Plaintiff has not established a genuine dispute of material fact as to whether Sawaya's behavior was severe or pervasive.

Glover alleges "Sawaya not only made two . . . sexual comments towards Glover – 'you have me sitting on hard' and 'I want to rub you down' – but also rubbed his hand up Glover's inner right thigh." (Doc. No. 75 at 19). While Sawaya's alleged behavior was offensive, that behavior amounts only to an isolated incident, which is insufficient to create an abusive working environment. *See, e.g., Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) ("[U]nder the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six–month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment."); *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) ("These incidents, if true, are offensive and condemnable. But they are not actionable as a hostile work environment. . . . [T]he incidents were isolated and not pervasive or severe enough to alter the terms and conditions of [plaintiff's] employment.")

Further, while Sawaya's alleged behavior was unquestionably offensive, it does not meet the "high bar" of severity necessary to establish a hostile work environment claim. *Diller v. Miami Valley Hosp.*, 102 N.E.3d 520, 535 (Ohio Ct. App. 2017) ("Court have repeatedly held that isolated

incidents, unless *extremely* serious, do not constitute a hostile work environment.") (emphasis in original).  The cases to which Plaintiff cites in opposition to Defendants' motion involve circumstances in which the harasser touched the female's employee's breasts or genitals, or forced the female employee to touch the harasser's genitals.  (*See* Doc. No. 75 at 18-19).  Glover stated Sawaya touched her thigh on top of her clothing and that he did not touch her genitals.  (Doc. No. 60 at 25).

Finally, Plaintiff seeks to establish an environment of pervasive harassment by incorporating an incident in which a supervisor named Jessica Arvay grabbed Glover's arm and pulled her over to another work area.  (Doc. No. 75 at 19; Doc. No. 40 at 5).  This incident has no bearing on Glover's hostile work environment claim, however, because there is no evidence that Arvay's conduct was "based on sex."  *Hawkins*, 517 F.3d at 332.

Viewing the evidence in the light most favorable to Glover, I conclude she fails to establish a genuine dispute of material fact as to whether Sawaya's conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of her employment and, therefore, Defendants are entitled to summary judgment on her hostile work environment claim.

### B.     SEX DISCRIMINATION

Plaintiff contends Defendants discriminated against Glover on the basis of sex because they coerced her into accepting a transfer to the assembly department, with the attendant reduction in pay and overtime, but never discussed moving Sawaya to a different department.  (Doc. No. 75 at 24-25).  Plaintiff's argument falls short.

In order to establish a prima facie case of discrimination against the UAW Local 12 for its representation of her, Glover must show (1) FCA violated the collective bargaining agreement by transferring her; (2) the UAW Local 12 violated its duty of fair representation; and (3) the UAW Local 12's actions were motivated by animus.  *Taylor v. Ohio Dep't of Rehab. & Corr.*, 2003-Ohio-2235,

2003 WL 21000925, at *4 (Ohio Ct. App. May 2, 2003) (citing *Bugg v. Int'l Union of Allied Indus. Workers of Am., Local 507*, 674 F.2d 595, 598 n.5 (7th Cir. 1982)); *see also Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 727 (N.D. Ohio 2008) (citing *Bugg*, 674 F.2d at 598-600 & n.5).

As an initial matter, Plaintiff's sex discrimination claim fails because she does not offer any evidence FCA violated the CBA when it transferred her to the assembly department. *See Taylor*, 2003 WL 21000925, at *4.

Moreover, Plaintiff's claim fails because she offers no evidence the union had any authority to make decisions regarding Glover's employment. Whether Glover requested a transfer or whether Epley, Alexander, or Sims proposed the transfer is no more than semantics, and cannot transform the nature of Plaintiff's claim against the union into something other than a claim for unfair representation. *See Jones v. Truck Drivers Loc. Union No. 299*, 838 F.2d 856, 861 (6th Cir. 1988) ("Unfair representation, then, is unfair representation whether by reason of sex discrimination, handicap discrimination, or a willful breach of responsibility to carry out clear terms of a collective bargaining agreement for the benefit of union members and employees."). The UAW Local 12 is Glover's union, not her employer, and she cannot defeat Defendants' motion for summary judgment by attempting to impute Defendants' alleged bad motives onto FCA's decision.

Therefore, I grant Defendants' motion for summary judgment as to Plaintiff's sex discrimination claim.

## C. RETALIATION

Plaintiff next contends that, after she engaged in protected activity by reporting Sawaya's sexual harassment, Defendants retaliated against her by transferring her to the assembly department. This argument falls short for the same reason as Plaintiff's sex discrimination claim.

To establish a prima facie claim of retaliation, Glover must show: (1) "[s]he engaged in protected activity; (2) defendants knew that [s]he engaged in the protected activity; (3) defendants

subjected [her] to an adverse employment action; and (4) the adverse employment action was causally connected to the protected activity." *Garcia v. Daimler Chrysler Corp.*, 320 F. App'x 356, 360 (6th Cir. 2009) (citing *Ladd v. Grand Trunk W. R.R., Inc.,* 552 F.3d 495, 502 (6th Cir. 2009)).

Glover fails to show the union, rather than FCA, was responsible for her transfer.  The fact that Epley discussed Glover's possible transfer with FCA before meeting with Glover is not evidence "the union played a part in the transfer of Glover to Assembly."  (Doc. No. 75 at 23).  The record evidence establishes Glover discussed the potential of a transfer out of the powder sand department with Sims shortly after the incident, (Doc. No. 69-10 at 3), and with Alexander before Alexander told Glover he would set up a meeting with Epley to discuss moving Glover so she no longer had to work with Sawaya.  (Doc. No. 60 at 41-42).  Epley testified he spoke with HR about potentially moving Glover prior to his meeting with her because Sims came and told Epley that Glover wanted to be moved.  (Doc. No. 63 at 16).

Glover has not provided any basis for her assertion that the union played a role in the alleged adverse employment action she suffered – her transfer.  Therefore, her retaliation claim fails as a matter of law.  *Garcia*, 320 F. App'x at 362 (rejecting plaintiff's retaliation claim because plaintiff "failed to show that the Union, as opposed to Chrysler, was responsible for his transfer").

### D.    CIVIL CONSPIRACY

 Finally, Defendants also are entitled to summary judgment on Plaintiff's claim for civil conspiracy.  In Ohio, a civil conspiracy is "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'"  *Lawyers Title Co., LLC v. Kingdom Title Sols., Inc.*, 592 F. App'x 345, 355 (6th Cir. 2014) (quoting *Kenty v. Transamerica Premium Ins. Co.,* 650 N.E.2d 863, 866 (Ohio 1995)).  A plaintiff asserting a civil conspiracy claim must prove, among other things, that the defendants engaged in an

"underlying unlawful act."  *Lawyers Title Co.*, 592 F. App'x at 355 (quoting *Gosden v. Louis*, 687 N.E.2d 481, 497 (Ohio Ct. App. 1996)).

Plaintiff asserts there are two underlying unlawful acts: "sexual harassment by Sawaya and a violation of the collective bargaining agreement" through Defendants' failure to report Sawaya's conduct to FCA.  Neither alleged act is sufficient to sustain Plaintiff's claim.  There is no evidence the Defendants conspired to allow or enable Sawaya to engage in the conduct of which Glover complaints.

As Defendants argue, Plaintiff's hostile work environment and sex discrimination claims do not qualify as underlying unlawful acts because those claims have been dismissed on summary judgment.  *Stiles v. Chrysler Motors Corp.*, 624 N.E.2d 238, 244 (Ohio Ct. App. 1993).  Nor can Plaintiff establish her civil conspiracy claim by alleging Defendants conspired to breach the collective bargaining agreement.  *See, e.g., All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.*, 162 F. App'x 554, 560 (6th Cir. 2006) (affirming summary judgment in favor of defendants "[b]ecause a contract claim cannot form the basis of a conspiracy claim, and because non-contracting parties cannot conspire to breach a contract") (alteration in original).

Therefore, I conclude Plaintiff's civil conspiracy claim fails as a matter of law and grant Defendants' motion for summary judgment as to this claim.

## V.  CONCLUSION

For the reasons stated above, I grant Defendants' motion for summary judgment on all claims.  (Doc. No. 69).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

11